IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ADAM MUSSER, <br><br>      Petitioner, <br><br> vs. <br><br> TERRY MAPES, <br><br>      Respondent. | **No. 4:10-cv-00349 – JEG** <br><br> **O R D E R** |
| ADAM MUSSER, <br><br>      Petitioner, <br><br> vs. <br><br> TERRY MAPES, <br><br>      Respondent. | **No. 4:10-cv-00350 – JEG** <br><br> **O R D E R** |
| ADAM MUSSER, <br><br>      Petitioner, <br><br> vs. <br><br> TERRY MAPES, <br><br>      Respondent. | **No. 4:10-cv-00352 – JEG** <br><br> **O R D E R** |
| ADAM MUSSER, <br><br>      Petitioner, <br><br> vs. <br><br> TERRY MAPES, <br><br>      Respondent. | **No. 4:10-cv-00354 – JEG** <br><br> **O R D E R** |

Petitioner Adam Musser is an inmate in the Iowa Department of Corrections, and he brings these petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to overturn his four Iowa state court convictions for criminal transmission of human immunodeficiency virus (HIV). See Iowa Code § 709C.1(a). Because all the cases concern violation of the same law and concern the same Petitioner, they have been consolidated for purposes of administration and review. This case has been on file since August 2010, and the Court regrets the age of this case, caused by eleven orders granting requested extensions of time for the parties to submit filings, which were

ultimately submitted on September 6, 2011, as well as the Court's own workload and resulting delay in addressing the merits of the submitted petition. The matter is now ready for ruling.

Musser, now represented by counsel, argues (1) his convictions violate the Eighth Amendment proscription against cruel and unusual punishment; (2) his convictions violate the Fourteenth Amendment because the Iowa law is void for vagueness both facially and as applied to him; (3) his convictions violate the First Amendment because they compel speech and chill freedom of association; (4) his convictions violate his Substantive Due Process Clause right to privacy; and (5) his trial counsel provided ineffective assistance by failing to object to admission of laboratory reports on Confrontation Clause grounds. Musser does not challenge the factual underpinnings of the Iowa Supreme Court's decisions affirming his convictions but instead argues the rulings were contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Respondent resists Musser's arguments on the merits. For the following reasons, the Court denies the petition, and the Court denies a certificate of appealability.

## I.    BACKGROUND

In 2002 and 2003, Musser had unprotected sexual intercourse with four different women. At the time, Musser was knowingly HIV-positive and receiving medical treatment for his condition, but he did not tell his victims prior to engaging in the sexual activity. The record reflects repeated sexual encounters with the women, that condoms were used some of the time and on one occasion failed, that Musser denied having any sexually transmitted disease when specifically asked, and that the victims did not ultimately become infected.[1] Musser was charged in four separate cases with violation of Iowa Code § 709C.(1)(a), which makes it a crime for someone who knows he is HIV-positive to "[e]ngage in intimate contact with another person." Iowa Code § 709C.1(1)(a). "'Intimate contact' means the intentional exposure of the body of one person to a bodily fluid of another person in a manner that could result in the transmission of the human immunodeficiency virus." Iowa Code § 709C.1(2)(b).

---

[1] The record specifically reflects three of the victims were ultimately not infected; the record is silent regarding the fourth victim.

Musser was found guilty on the charges and sentenced to the maximum term of twenty-five years on each of the four convictions. Three sentences were imposed to run concurrently, and one was imposed to run consecutively to the other three, for a total of fifty years in prison. State v. Musser, 721 N.W.2d 734, 741 (Iowa 2006).[2] On direct appeal, Musser unsuccessfully raised before the Iowa Supreme Court all the claims he raises in this federal petition for habeas relief. See id. Musser sought postconviction relief in state court but later dismissed those actions. He then filed this timely petition under 28 U.S.C. § 2254.

## II.    STANDARD OF REVIEW

This Federal Court may consider a petition "for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Consequently, this Court has authority to grant habeas relief for errors of federal constitutional law only, not state law. Id.; see also Turnage v. Fabian, 606 F.3d 933, 942 (8th Cir. 2010) ("As we have said time and again, we lack authority to review . . . state courts' interpretation and application of state law.") (internal quotation marks and citation omitted).

For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

The Supreme Court has held that a state court decision is "contrary to" federal law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a

---

[2] See also State v. Musser, 722 N.W.2d 419 (Iowa 2006) (unpublished table dispositions), and State v. Musser, 721 N.W.2d 758 (Iowa 2006), regarding the appeals in the other three cases.

case differently than we have done on a set of materially indistinguishable facts." Id. at 694. Under the "unreasonable application" standard, this Court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. See Williams v. Taylor, 529 U.S. 362, 411-13 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. See Lockyer v. Andrade, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). Of signal importance herein, the applicable federal law is the law in effect as of "'the time the state court renders its decision.'" Greene v. Fisher, 132 S. Ct. 38, 44 (2011) (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011)).

Habeas relief is granted sparingly, reserved for "'extreme malfunctions in the state criminal justice systems'" and "not as a means of error correction." Id. at 43 (quoting Harrington, 131 S. Ct. at 786). As the Supreme Court has reminded courts, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. . . . [The law] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." Harrington, 131 S. Ct. at 786.

Within that disciplined legal framework, the Court addresses Musser's arguments.

## III.   EIGHTH AMENDMENT CLAIM

Musser argues that the Iowa Supreme Court unreasonably concluded that his convictions did not violate his Eighth Amendment right to be free from "cruel and unusual punishments." See U.S. Const. amend. VIII. He argues the court erroneously believed it could not consider his individual circumstances in deciding whether the punishment he received was constitutionally proportionate to the crime in his particular case. He further argues the Iowa Supreme Court

unreasonably ignored that section 709C.1 does not require an intent to inflict injury or the occurrence of an injury. Finally, he argues the court unreasonably failed to compare Iowa's punishment against him with punishment for similar crimes in other states.

## A. Proportionality

The Eighth Amendment includes a concept of proportionality requiring that the punishment fit the crime. Harmelin v. Michigan, 501 U.S. 957, 997, 1001 (1991) (Kennedy, J., concurring) (plurality opinion). Challenges regarding proportionality of the punishment and the crime have fallen into two general lines. One line, not at issue in Musser's case, includes limits affecting whole categories of offenders, or whole categories of crimes. See e.g., Graham v. Florida, 130 S. Ct. 2011, 2034 (2010) (life without the possibility of parole cannot be imposed on juveniles who do not commit homicide);[3] Roper v. Simmons, 543 U.S. 551, 578 (2005) (death penalty cannot be imposed on juveniles); Atkins v. Virginia, 536 U.S. 304, 320-21 (2002) (death penalty cannot be imposed on offenders whose intellect is low functioning); Coker v. Georgia, 433 U.S. 584, 597 (1977) (death penalty cannot be imposed for crimes not involving homicide).

In the other line of cases, applicable to individual challenges like Musser's, the Court has used a three-part test laid out in Solem v. Helm, 463 U.S. 277 (1983), in which the Court first makes a threshold determination of whether it can infer a sentence is "grossly disproportionate" to the offense. This threshold embraces a "narrow proportionality principle" when comparing the "gravity of the offense and the harshness of the penalty." Id. at 290-91. It "does not require strict proportionality between crime and sentence" but rather "forbids only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin, 501 U.S. at 997, 1001 (Kennedy, J., concurring) (plurality opinion); see also Graham, 130 S. Ct. at 2021 (Justice Kennedy's concurring opinion in the controlling view of the plurality decision in Harmelin). Guiding this determination are four principles – "the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be

---

[3] Until Graham, categorical challenges had been permitted in death penalty cases only. The Supreme Court is considering whether the rule prohibiting life in prison without parole for juvenile offenders who do not commit homicide should be extended to juveniles who do commit homicide. Jackson v. Norris, No. 09-145, __ S.W.3d __, 2011 WL 478600 (Ark. Feb. 9, 2011), cert. granted sub nom., Jackson v. Hobbs, 132 S. Ct. 548 (2011), and Miller v. State, 63 So. 3d 676 (Ala. Crim. App. 2011), cert. granted sub nom., Miller v. Alabama, 132 S. Ct. 548 (2011).

guided by objective factors." <u>Harmelin</u>, 501 U.S. at 1001. If this threshold is met, then the court proceeds to parts two and three – an intrajurisdictional comparison of the crime and other similar crimes within that jurisdiction, and an interjurisdictional comparison of the crime with the same crime in other jurisdictions. <u>Solem</u>, 463 U.S. at 290-91. Given the deference that must be accorded legislatures and sentencing courts, and the emphasis on objective, not subjective factors, the threshold is almost never crossed. <u>Id.</u> at 290 n.16; <u>see also</u> <u>Graham</u>, 130 S. Ct. at 2037 (Roberts, C.J., concurring). Only once – in <u>Solem</u> – has the United States Supreme Court ruled under this analysis that a term of years was grossly disproportionate to the crime.

In determining what sorts of circumstances cross the threshold, the United States Supreme Court and the Iowa Supreme Court have both recognized that Federal jurisprudence in this area has not been exceedingly clear. <u>See, e.g.</u>, <u>Lockyer</u>, 538 U.S. at 72; <u>State v. Bruegger</u>, 773 N.W.2d 862, 873 (Iowa 2009). In <u>Lockyer</u>, the Supreme Court's last major pronouncement on the issue before the Iowa Supreme Court decided Musser's case, the Court acknowledged, "in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." <u>Lockyer</u>, 538 U.S. at 72. The only clearly established principle, the Court held, was "the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." <u>Id.</u> at 73. It went on to hold that the petitioner in that case, who was sentenced to life in prison with the possibility of parole in fifty years under California's "Three Strikes Law" on a third "strike" of stealing videotapes, was not entitled to habeas relief under either the "contrary to" or the "unreasonable application" ground. <u>Id.</u> at 74, 77. Considering the "contrary to" prong, it held the state court reasonably relied on a Supreme Court case predating <u>Solem</u> that had not been specifically overturned, and it was not clearly established that the petitioner's sentence was not materially indistinguishable from the Supreme Court's prior precedents. <u>Id.</u> at 74 (citing the sentence of life without parole in <u>Solem</u>, 463 U.S. at 279, and the sentence of life in prison with the possibility of parole in <u>Rummel v. Estelle</u>, 445 U.S. 263, 267 (1980)). On the "unreasonable application" prong, it held the state court correctly identified the "grossly disproportionate" principle, and giving the state court the proper deference owed to it, "it was not objectively unreasonable" for the state court "to conclude that these 'contours' permitted an affirmance of

[the Petitioner's] sentence." Id. at 76. In a companion case to Lockyer, the Court held that a prison sentence of twenty-five years to life was not grossly disproportionate for a defendant with a history of recidivism who stole golf clubs with a value of $1200. Ewing v. California, 538 U.S. 11, 31 (2003).

A year after Musser was decided, when the Iowa Supreme Court considered whether a twenty-five-year sentence was grossly disproportionate to the crime of statutory rape enhanced based on a defendant's preteen conviction, it also pointed out that the Supreme Court had "not articulated what factors go into this initial determination." Bruegger, 773 N.W.2d at 873. After parsing through the "multitude of majority, plurality, and dissenting opinions" by the United States Supreme Court on the topic of proportionality, id., the Iowa Supreme Court ruled it could make an *individualized* determination on the threshold question; that is, it could consider all the facts and circumstances involved in a particular defendant's case, "including his intent or motive in committing a crime," id. at 875. It based its ruling on a narrow reading of Justice Scalia's con-curring opinion in Harmelin[4] and the Court's plurality in Ewing. Id. (citing Solem, 463 U.S. at 293, and citing Harmelin, 501 U.S. at 995-96 (Scalia, J., concurring)).[5] The Iowa Supreme Court acknowledged that Justice Scalia's opinion in Harmelin could also be read broadly, however, to preclude consideration of an individual defendant's circumstances except in the context of the death penalty. Bruegger, 773 N.W.2d at 875. In State v. Oliver, the Iowa Supreme Court recently acknowledged that in Graham, 130 S. Ct. at 2022, the Supreme Court clarified the framework for proportionality challenges. See State v. Oliver, __ N.W.2d __, No. 10-1751, 2012 WL 1058249, at *3-4 (Iowa Mar. 30, 2012) (discussing Graham – and the various views regarding the permissibility of an individualized determination in Harmelin and Ewing).

At the time the Iowa Supreme Court issued its opinion in Musser, consequently, the law was clearly established that a Federal Eighth Amendment challenge to a term of years required a court to determine if the sentence was "grossly disproportionate" to the offense, that such challenges rarely succeeded, that substantial deference is afforded to state legislatures and

---

[4] Justice Scalia's opinion in Part IV comprised a majority of the Court. Harmelin, 501 U.S. at 994 (Scalia, J., joined by Rehnquist, C.J., and O'Connor, Kennedy, and Souter, JJ).

[5] The Iowa Supreme Court in Bruegger remanded for determination whether statutory penalty was cruel and unusual as applied to the defendant. Bruegger, 773 N.W.2d at 886.

various penological schemes, and "that proportionality review be guided by objective factors." Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring). Beyond that, however, it was not clearly established what precise factors courts were required to consider in making that threshold determination, and it was not clear whether courts should consider a defendant's intent or the particular victim and the facts of the crime.

### B. Iowa Supreme Court Decision

This Court now turns to the essence of the Iowa Supreme Court's decision in Musser's appeal. The Iowa Supreme Court correctly relied on the Solem test and stated, "the Solem proportionality test is limited "to the rare case [in which] a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality." Musser, 721 N.W.2d at 749 (internal quotation marks and citation omitted). It went on, "Therefore, our first inquiry is whether Musser's sentence appears grossly disproportionate in view of the gravity of his offense. This analysis is undertaken objectively without considering the individualized circumstances of the defendant or the victim in this case." Id. at 749 (citations omitted). Not surprisingly, the case on which the Iowa Supreme Court relied, State v. August, 589 N.W.2d 740 (Iowa 1999), in turn relied on Justice Scalia's opinion in Harmelin that "individualized consideration" of a defendant's circumstances should be limited to capital punishment cases. See August, 589 N.W.2d at 743 (quoting Harmelin, 501 U.S. at 996 (Scalia, J., concurring)).

On the threshold question of gross disproportionality, the Iowa Supreme Court ruled that, "[v]iewed objectively, we cannot say the punishment set by the legislature for the crime of criminal transmission of HIV is grossly disproportionate to the harm sought to be punished and deterred." Musser, 721 N.W.2d at 749. The Court explained that HIV is an agent that causes Acquired Immune Deficiency Syndrome (AIDS), a life-threatening disease that, at the time, was incurable and fatal, and the spread of the virus could have grave and severe consequences to the public welfare. Id. The Court likened § 709C.1 to the crime of first-degree robbery, another crime warranting a twenty-five-year sentence, which, like § 709C.1, also does not require an express intent to inflict harm. The crime of robbery covers the acts of defendants who are armed with a dangerous weapon and intend to commit a theft. Id. at 749-50.

> And, just like the robber carrying a gun or a knife, a defendant infected with HIV is armed with a dangerous virus capable of inflicting serious injury or death on the victim.

> In view of the gravity of the offense, we cannot say a twenty-five-year sentence for the criminal transmission of HIV appears grossly disproportionate.

Id. at 750.[6]

As illustrated by the cases subsequent to Solem, Supreme Court precedent regarding the factors in the Solem test has been somewhat in flux, and that lack of clarity contributed to somewhat different treatment over time. In Musser's case, the Iowa Supreme Court's application of the Supreme Court precedent then available was reasonable. The case on which Musser relies to argue for an individualized determination based on his own culpability was, at the time the Iowa Supreme Court ruled, used only for death penalty cases, not for sentences to a term of years, see Enmund v. Florida, 458 U.S. 782, 797 (1982) (overturning death penalty for felony murder in which defendant did not kill, did not attempt to kill, and did not intend to kill); and the categorical approach in that case is simply inapposite to Musser's case. Further, as Justice Kennedy explained in Harmelin,

> Determinations about the nature and purposes of punishment for criminal acts implicate difficult and enduring questions respecting the sanctity of the individual, the nature of law, and the relation between law and the social order. . . . And the responsibility for making these fundamental choices and implementing them lies with the legislature.

Harmelin, 501 U.S. at 998 (Kennedy, J., concurring). The legislatures of the various States in our Federal system are afforded wide latitude for fashioning legitimate penological schemes. Graham, 130 S. Ct. at 2037 (Roberts, C.J., concurring). Consequently, this Court concludes the Iowa Supreme Court did not unreasonably determine that Musser's case did not cross the threshold to an inference of gross disproportionality.

Even considering the particular circumstances of Musser's crimes, this Court would not be convinced that Musser's twenty-five-year sentence per case is grossly disproportionate to his crime of criminal transmission of HIV. Nor would this Court project a different decision by the Iowa Supreme Court. Musser was knowingly carrying a dangerous medical condition commonly known to be spread to another person with the unprotected act of sexual intercourse. Not only did he fail to provide his sexual partners with this information, he actually withheld the

---

[6] Given this fundamental analysis by the Iowa high court, a more individualized analysis based upon the facts of Musser's cases, most notably the absence of any actually infected victims, would be seemingly destined to the same result. See text at p. 9-10, *infra*.

information when asked.  Much of the activity was completely unprotected; and when a condom was used but failed, Musser continued to withhold the information of the danger.  The fortunate absence of actual infection of the victims is of no moment in the wake of the repeated knowing and intentional exposure of the uninformed and unsuspecting victims to the obvious and grave danger.  Thus, whether the individualized approach was always in place, or only recently arrived, the result appears inescapable for Musser.

Once the Iowa Supreme Court determined there was no inference of gross disproportionality, its analysis was complete.  Contrary to Musser's argument, the Iowa Supreme Court was not required to conduct intrajurisdictional or interjurisdictional analyses of the crime and sentence.  Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring) ("[I]ntrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.").  Upon review of the applicable federal law and the facts of Musser's cases, this Court concludes the Iowa Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  See 28 U.S.C. § 2254(d).  No habeas relief will issue on the Eighth Amendment claim.

## IV.  VAGUENESS AND OVERBREADTH CLAIMS

Musser argued before the Iowa Supreme Court that § 709C.1 was overbroad and impermissibly chilled his freedom of association, and he argued the law was facially vague because it did not define the modes of transmission for HIV.  Musser, 721 N.W.2d at 746.  In this habeas action, Musser argues that the Iowa Supreme Court unreasonably concluded that § 709C.1 does not violate Due Process Clause requirements that the law provide fair notice of what acts are prohibited and that the law provide minimal enforcement standards so that it is not subject to arbitrary enforcement.  Musser challenges the law both as applied to him and on its face.  Musser's central argument, however, is that the Iowa Supreme Court relied on an "as applied" analysis to uphold his conviction, and it ignored his attack that § 709C.1 is overbroad and therefore unconstitutional on its face.  In particular, he argues the court failed to analyze ways,

other than sexual intercourse, that the term "intimate contact" could inhibit the First Amendment freedom of association.[7]

Under the Due Process Clause, a law is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000), and Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)). In a typical facial attack, a person must "establish that no set of circumstances exists under which [the law] would be valid, . . . or that the statute lacks any plainly legitimate sweep." United States v. Stevens, 130 S. Ct. 1577, 1587 (2010) (internal quotation marks and citations omitted). A person whose conduct clearly falls within the reach of a statute, that is, the law is valid "as applied" to that person, cannot complain that the law is vague as applied to others. See Williams, 553 U.S. at 304.

In the context of the First Amendment, however, the Supreme recognizes a second, more relaxed "type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," Stevens, 130 S. Ct. at 1587 (internal quotation marks and citations omitted). The Supreme Court has emphasized that invalidation based on the First Amendment overbreadth doctrine is "strong medicine" and not "casually employed." Williams, 553 U.S. at 293 (internal quotation marks and citations omitted). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily

---

[7] In the context of his vagueness and overbreadth claims, Musser does not raise a First Amendment claim that his speech was compelled. The Court, accordingly, limits the discussion in this section to Musser's claim that his freedom of association was curtailed, which is the claim the Iowa Supreme Court adjudicated. The Court observes, however, that Musser's association claim, which he identifies as the "chill[ing of] individual freedoms of association by prohibiting intimate contact," Pet'r's Br. 17, is not merely association. He is targeting the right of two persons to engage in private, intimate contact resulting in the exchange of bodily fluids and, as such, the right is more akin to his rights described under the Substantive Due Process Clause. See Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984) (pointing out the Court's two approaches to "freedom of association": one under the First Amendment "for the purpose of engaging in those activities protected by the First Amendment," and one under the fundamental concept of "personal liberty" for "certain intimate human relationships"); see also the discussion at p. 17, infra, regarding the Substantive Due Process Claim.

associated with speech (such as picketing or demonstrating)." <u>Virginia v. Hicks</u>, 539 U.S. 113, 124 (2003).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." <u>Williams</u>, 553 U.S. at 293. The Iowa Supreme Court construed the statute, and this Court defers to that court's authority to interpret its own law. <u>See</u> <u>Stevens</u>, 130 S. Ct. at 1587. Section 709C.1, in its entirety, provides as follows:

> 1. A person commits criminal transmission of the human immunodeficiency virus if the person, *knowing that the person's human immunodeficiency virus status is positive,* does any of the following:
>
> > a. *Engages in intimate contact with another person.*
> >
> > b. Transfers, donates, or provides the person's blood, tissue, semen, organs, or other potentially infectious bodily fluids for transfusion, transplantation, insemination, or other administration to another person.
> >
> > c. Dispenses, delivers, exchanges, sells, or in any other way transfers to another person any nonsterile intravenous or intramuscular drug paraphernalia previously used by the person infected with the human immunodeficiency virus.

Iowa Code § 709C.1 (emphasis added). "'Intimate contact' means the *intentional* exposure of the body of one person to a bodily fluid of another person *in a manner that could result in the transmission* of the human immunodeficiency virus." Iowa Code § 709C.2(b) (emphasis added). It is not an element of the crime that HIV actually be transmitted. It is an affirmative defense if the other person knowingly consented to exposure to the virus. <u>See</u> Iowa Code § 709C.1(5).

Musser attacks as vague and overbroad the language "intimate contact" and "in a manner that *could* result in the transmission" of HIV. He argues the law does not sufficiently describe what acts are prohibited and that it chills freedom of association by prohibiting intimate contact. This Court first observes that although the law does not require a specific intent to harm, the person acting must know he or she has HIV and must knowingly expose HIV-infected bodily fluid to another. The Iowa Supreme Court ruled the language of the law is aimed at particular conduct, that is, "contact that exposes another to bodily fluid from the infected person '*in a manner that could result in the transmission of the human immunodeficiency virus.*'" <u>Id.</u> at 746 (emphasis in original) (quoting § 709C.2(b)). It construed the law as reaching some speech by requiring persons to divulge their HIV status, but it emphasized that the primary intent of the law

is to protect the public by preventing the transmission of HIV, not to force the divulgence of HIV status, and it ruled that disclosure was the least-restrictive means of furthering the government's compelling interest. Musser, 721 N.W.2d at 743-44, 746 (discussing overbreadth challenge in context of freedom of association, and discussing free speech challenge in context of compelled speech).

Relying on its prior precedent, the Iowa Supreme Court held that the phrase "intimate contact" gave Musser fair notice that his act of unprotected sexual intercourse exposed a person to bodily fluid that could transmit HIV. Id. at 745. In a prior case, State v. Keene, 629 N.W.2d 360, 365-66 (Iowa 2001), the Iowa Supreme Court ruled that "any reasonably intelligent person is aware it is possible to transmit HIV during sexual intercourse, especially when it is unprotected." Id. (holding § 709C.1 is not void for vagueness and clearly applied to the defendant's acts).[8] Thus, the Iowa Supreme Court found the law was not vague as applied to Musser. Musser, 721 N.W.2d at 745. The Iowa Supreme Court further explained that the parameters of the phrase "intimate contact" with "infectious bodily fluids" can be ascertained by reference to common knowledge and related statutes, including Iowa Code Chapter 141A, which covers transmission of AIDS, which in turn relies on information disseminated by the Department of Health and Human Services' Centers for Disease Control and Prevention (CDC). Musser, 721 N.W.2d at 746-47. The CDC website lists ways in which HIV may be transmitted by bodily fluid and other means, as well as ways in which it *cannot* be transmitted. Id.; see also CDC, HIV Transmission, http://www.cdc.gov/hiv/resources/qa/transmission.htm (last accessed Apr. 11, 2012).

Musser argues that he also raised a facial challenge to the law but that the Iowa Supreme Court looked at the facts of only his case and failed to consider the law's reach into other conduct, such as kissing, wearing a condom during intercourse, inadvertent bleeding or sweating during basketball, or the passage of HIV from a mother to her child in pregnancy. In answer to Musser's hypotheticals, the Iowa Supreme Court ruled that to the extent that kissing or playing basketball "is protected by the First Amendment, the law would not reach such interactions *when*

---

[8] The Court's conclusion in Keene was approved by the Honorable Mark W. Bennett when Keene sought federal habeas relief. Keene v. Ault, No. C03-1041-MWB, 2005 WL 1177905, at *10-11 (N.D. Iowa May 16, 2005) (denying § 2254 relief on as-applied claim).

*they are not capable of transmitting HIV.*"  Musser, 721 N.W.2d at 746 (emphasis added).  There is, admittedly, a very low likelihood of transmitting HIV during kissing, sports, and effective use of a condom.[9]  Close cases, like those Musser describes, however, "can be imagined under virtually any statute.  The problem they pose is addressed not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.  []  What renders a statute vague . . . is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of what that fact is."  Williams, 553 U.S. at 306 (citation omitted).  As for the hypothetical about a mother transmitting HIV to her child, Respondent concedes that the pregnancy Musser describes would not be a prosecutable crime.  Resp.'s Br. 33, ECF No. 34.  This does not present a problem of prosecutorial *"noblesse oblige."*  See Stevens, 130 S. Ct. at 1591.  The criminalization of HIV transmission by a mother to her child in pregnancy raises issues regarding the definition of personhood that are not discussed by the parties here or in § 709C.1.  Cf. Williams, 553 U.S. at 302-03 (addressing hypothetical situations at the outer limits of a statute's constitutional reach that "could of course be the subject of an as-applied challenge").  Even if the constitutional balance in that situation did not favor the State, such an exception would not render the law *substantially* overbroad.  As explained in Williams, the "'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'"  Id. at 303 (quoting Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984)).

---

[9] The Director of Johnson County Public Health testified that HIV is not transmitted by kissing or sweating on someone, and the proper use of a condom reduces the risk.  Musser, No. 065815, Trial Tr. 158, 162.  Musser's expert admitted there was no documented case of HIV transmission through open-mouth kissing.  Musser, Nos. 064374, 064887, 065148, 065818, Hrng. of Oct. 30, 2003, Tr. at 12.  According to the CDC, kissing is not known to cause the transmission of HIV apart from "a remote risk from deep, open-mouth kissing if there are sores or bleeding gums and blood is exchanged."  http://www.cdc.gov/hiv/resources/qa/transmission.htm (follow "Can HIV be transmitted by kissing?" hyperlink) (last accessed Apr. 11, 2012).  Likewise, the chance of contracting HIV from inadvertent bleeding while playing sports is very low, "[t]here are no documented cases of HIV transmitted during participation in sports," and if bleeding occurs, participation should stop until the bleeding stops and the area antiseptically cleaned and bandaged.  Id. (follow "Can I get HIV while playing sports?" hyperlink).  The virus does not survive well outside the body, which makes environmental transmission remote.  Id. (follow "How well does HIV survive outside the body?" hyperlink).  Condoms are "very effec-tive" in preventing HIV, but they must be used correctly, and consistently, and they are not perfect.  Id. (follow "Can I get HIV from vaginal sex?" hyperlink).

Where, as here, the defendant's "conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973). The law, as the Iowa Supreme Court construed it, requires the actor to know he or she has HIV and to engage in intimate contact with another person that puts the other unwittingly at risk of contracting the virus. It viewed the law narrowly and concluded that § 709C.1 "simply 'does not reach a substantial amount of constitutionally protected conduct.'" Musser, 721 N.W.2d at 746 (quoting City of Chicago v. Morales, 527 U.S. 41, 52 (1999)).[10] Given the hesitation courts must exercise in declaring a law overbroad, and given the deference owed to the Iowa Supreme Court's ruling that the potential number of invalid applications is not a substantial fraction of the plainly legitimate reach of the law, this Court cannot say that the Iowa Supreme Court's decision was an unreasonable application of clearly established Supreme Court precedent regarding the overbreadth doctrine. See 28 U.S.C. § 2254(d). No habeas relief will issue on Musser's challenge to § 709C.1 on vagueness or overbreadth grounds. See 28 U.S.C. § 2254(d).

## V. FIRST AND FOURTEENTH AMENDMENTS

Musser argues § 709C.1 violates the First and Fourteenth Amendments because it compels speech.[11] The First Amendment, applicable to the States through the Due Process Clause of the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I; see Virginia v. Black, 538 U.S. 343, 358 (2003).

The Iowa Supreme Court ruled that § 709C.1 regulates speech on the basis of content by requiring a person to disclose his or her HIV-positive status. Musser, 721 N.W.2d at 742-43. Consequently, it applied strict scrutiny analysis to the law, which requires the government to

---

[10] Justice Stevens' language in Morales, which the Iowa Supreme Court cited, was not the controlling opinion; however, the cases relied upon by Justice Stevens are undisputedly sound pronouncements of the law regarding overbreadth and vagueness, to wit, Broadrick, 413 U.S. at 612-15, and Kolender v. Lawson, 461 U.S. 352, 358 (1983).

[11] Musser's heading in his merits brief regarding this claim is that the statute is unconstitutional "because it compels speech and chills freedom of association." Pet'r's Br. 19. The body of his argument, however, focuses only on speech and not on association. The Iowa Supreme Court addressed this First Amendment question in the context of compelled speech only. Musser, 721 N.W.2d at 741-45. Consequently, this Court also considers the claim only as it pertains to compelled speech.

show the law is narrowly tailored to promote a compelling government interest, with no less restrictive means available to further that interest. Id. at 744 (quoting United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813 (2000)). The Iowa Supreme Court concluded the government had a compelling reason to act, that is, to protect "public health by discouraging the transmission of the AIDS virus." Id. Musser does not dispute that protecting the health and well-being of the public is a compelling interest. At the time the court ruled, it recognized there was no cure for HIV and that unprotected "'sexual intercourse is one of the most common methods of passing the'" virus, id. at 744-45 (quoting Keene, 629 N.W.2d at 365). It further held that the disclosure requirement was narrowly tailored to accomplish that purpose. It reasoned, "[t]he statute does not absolutely prohibit an infected person from having sexual relations with another. Moreover, section 709C.1 does not compel public disclosure of an infected person's HIV status; an infected person may privately inform a potential sexual partner of his or her condition. We cannot conceive of a less restrictive way in which the state could accomplish its goal, and the defendant has not suggested such an alternative." Id. at 744.[12]

Musser maintains the Iowa Supreme Court failed to show the law was the least restrictive means of promoting the government interest. He first argues the Iowa Supreme Court failed to cite evidence showing that disclosure actually lowers incidents of HIV transmission. He relies on Carey v. Population Services, International, 431 U.S. 678, 695-96 (1977), where the Supreme Court struck down a law limiting minors' access to contraceptives when the State of North Carolina conceded it had no evidence that more access to contraceptives resulted in more sexual activity; and it took judicial notice that, with or without access, "the incidence of sexual activity among minors is high." But the Court's ruling in Carey is not helpful to Musser on the question of HIV transmission. It is axiomatic that abstinence from sex is known to be "the most effective

---

[12] The Iowa Supreme Court favorably viewed two other state courts that upheld similar HIV disclosure laws. See People v. Jensen, 586 N.W.2d 748, 758-59 (Mich. Ct. App. 1998) (holding that compelled speech that arose as a "negative First Amendment right," that is, a right not to be forced to disclose information did not require traditional strict scrutiny, but upon weighing the person's interest in avoiding disclosure of HIV status against the government's interest in public health and safety, the government's interests outweighed the individual's); see also State v. Gamberella, 633 So.2d 595, 604 (La. Ct. App. 1991) (holding that Louisiana's law forcing HIV-positive person to disclose status "prior to engaging in sexual activity . . . is narrowly drawn to further the state's compelling interest").

way to avoid all STDs, including HIV." http://www.cdc.gov/hiv/resources/qa/transmission.htm (follow "Is there a connection between HIV and other sexually transmitted diseases?" hyperlink) (last accessed Apr. 11, 2012). Musser argues there are less restrictive means that the court failed to consider, such as compelling people to wear condoms, or putting the burden on the other party to ask if his or her partner has HIV. Such requirements actually sweep more broadly than the government's requirement; and, in the case of placing the burden on the victim to ask, there was evidence in Musser's trials to the effect that the victims did ask, and Musser still did not reveal his HIV status. See Musser, No. 065818, Trial Tr. 195-96; Musser, No. 064887, Trial Tr. 198; Musser, No. 064374, Trial Tr. 118-19, 122; Musser, No. 065138, Trial Tr. 146. Requiring someone to give another person the option of informed consent is a narrow step in preventing the spread of the virus. Upon review of the applicable federal law and the facts of Musser's cases, this Court concludes the Iowa Supreme Court's decision was not an unreasonable application of federal law as determined by the United States Supreme Court. No habeas relief will issue on Musser's First Amendment claim. See 28 U.S.C. § 2254(d).

## VI.   SUBSTANTIVE DUE PROCESS CLAIM

Musser argues the Iowa Supreme Court unreasonably applied Lawrence v. Texas, 539 U.S. 558 (2003), when it concluded that § 709C.1 was not an unconstitutional intrusion on his right to privacy in violation of the Substantive Due Process Clause, a principle that grows out of the concept of liberty in the Fifth Amendment and is applicable to the States through the Fourteenth Amendment. See Musser, 721 N.W.2d at 748; see also Lawrence, 539 U.S. at 564-67 (surveying cases describing "the substantive reach of liberty under the Due Process Clause"). In Lawrence, the Supreme Court declared unconstitutional a Texas law that criminalized intimate sexual conduct by persons of the same sex. Lawrence, 539 U.S. at 578.

The Iowa Supreme Court readily distinguished Lawrence, which involved "'two adults who, *with full and mutual consent from each other*, engaged in sexual practices common to a homosexual lifestyle.'" Musser, 721 N.W.2d at 748 (quoting Lawrence, 539 U.S. at 578, emphasis in Musser). Musser objects to the Court's conclusion, arguing the Iowa law reaches the private acts of consenting adults. His reasoning, however, begs the question. Iowa's law, as the Iowa Supreme Court emphasized, is aimed at protecting *non*-consenting persons, and it is an

17

affirmative defense to the crime that the other person knew of the defendant's HIV-positive status and consented to the intimate conduct. Consequently, Musser's example is outside the proscribed conduct. Furthermore, the Court in <u>Lawrence</u> found it relevant that the case before it did not involve "persons who might be injured," <u>Lawrence</u>, 539 U.S. at 578, whereas the potential injury for HIV infection under § 709C.1 could be fatal. The Iowa Supreme Court's ruling was not an unreasonable application of <u>Lawrence</u>. No habeas relief will issue on Musser's Substantive Due Process Clause claim. <u>See</u> 28 U.S.C. § 2254(d).

## VII. SIXTH AMENDMENT CLAIM

Musser argues the Iowa Supreme Court's decision on his ineffective assistance claim, that counsel should have raised a Confrontation Clause objection to admission of laboratory reports, is contrary to the Supreme Court's decision in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), and <u>Davis v. Washington</u>, 547 U.S. 813 (2006). The trial court admitted two laboratory reports showing Musser tested positive for HIV. <u>Musser</u>, 721 N.W.2d at 750. The reports were based on samples Musser provided the University of Iowa Hygienic Laboratory in 2000, two years before the alleged crimes, and the lab kept the results as part of its statutory recordkeeping responsibility. <u>Id.</u> at 750-51. The Iowa Supreme Court ruled the records were admissible under the business records exception to the hearsay rule. <u>Id.</u> at 751-52 (relying on Iowa R. Evid. 5.803(6)). It further ruled that because the Confrontation Clause claim was without merit, counsel did not fail a duty to raise the issue. <u>Id.</u> at 754.

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) counsel's representation was deficient, and (2) the deficiency prejudiced petitioner. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The Court need not address both components of the test if a petitioner makes an insufficient showing on one of the prongs. <u>Id.</u> at 697. To establish the first prong, Petitioner must demonstrate counsel's performance fell below an objective standard of reasonableness. <u>Id.</u> at 687-88. Petitioner must overcome a strong presumption that counsel performed adequately. <u>Id.</u> at 689-90. To meet the second prong, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694; <u>see also</u> <u>Lockhart v. Fretwell</u>,

506 U.S. 364, 369-70 (1993). This Court's review is another step removed from the original analysis – this Court may grant federal habeas relief only if the state court's ruling was an unreasonable application of <u>Strickland</u>.

The Confrontation Clause of the Sixth Amendment, binding on the states through the Fourteenth Amendment, provides a defendant the right "to be confronted with the witnesses against him." U.S. amend. VI; <u>see</u> <u>Pointer v. Texas</u>, 380 U.S. 400, 403 (1965). The Supreme Court has held this right requires that "testimonial" evidence not be used against a defendant unless the witness is "unavailable to testify, and the defendant [] had a prior opportunity for cross-examination." <u>Crawford</u>, 541 U.S. at 53-54. Although what constitutes "testimony" has not been exhaustively defined, it at least includes "affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, . . . [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. . . ." <u>Id.</u> at 51-52 (internal quotation marks and citations omitted); <u>see also</u> <u>Davis</u>, 547 U.S. at 822, 830 (holding that a victim's written statements, not made during an emergency, but instead made in affidavit given to police officer and prepared to establish events potentially relevant to a criminal prosecution, were testimonial and could not be admitted in lieu of witness's live testimony).

The Iowa Supreme Court considered <u>Crawford</u> and <u>Davis</u>, neither of which involved laboratory reports, and it ruled the laboratory reports in Musser's case were not testimonial. <u>Musser</u>, 721 N.W.2d at 753-54. It relied on numerous cases holding that laboratory reports and hospital records are not testimonial. <u>Id.</u> It considered the possibility that the lab personnel might have known the reports could be used in a future prosecution under § 709C.1, but it ruled, "that use would be rare and certainly collateral to the primary purpose of providing the defendant and his medical providers with the information they needed to make informed treatment decisions." <u>Id.</u> at 754. Consequently, it ruled, there was no merit to a Confrontation Clause issue, counsel failed no duty by omitting the issue, and Musser's ineffective assistance of counsel claim failed.

The Iowa Supreme Court acknowledged that <u>Crawford</u> and <u>Davis</u> were the controlling Supreme Court cases at the time of Musser's appeal, and neither of those cases materially alters

the analysis in Musser's case.[13]  See Williams, 529 U.S. at 411-13.  The Iowa Supreme Court's decision also was not an unreasonable application of either case.  Its decision that the documents were nontestimonial and thus did not implicate the Confrontation Clause is likewise fatal to Musser's claim under Strickland because counsel cannot be ineffective by failing to raise a meritless claim.  Strickland, 466 U.S. at 687, 697 (petitioner must show counsel's performance prejudiced him).  Accordingly, the Iowa Supreme Court's decision was not an unreasonable application of federal law as determined by the United States Supreme Court.  See 28 U.S.C. § 2254(d).  No habeas relief will issue on Musser's Sixth Amendment claim.

## VIII. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States Courts, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the Petitioner.  District Courts have the authority to issue certificates of appeal- ability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b).  "A certificate of appealability may issue under [this section] only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Musser has not made a substantial showing of the denial of a constitutional right; therefore, a certificate of appealability must be **denied.**  He may request issuance of a certificate of appealability by a judge on the Eighth Circuit Court of Appeals.  See Fed. R. App. P. 22(b).

## IX.   SUMMARY

The Court has carefully reviewed the entire record of the trial and appeal to the Iowa Supreme Court for each of Musser's four cases, as well as the briefs of the parties.  Having done so, the Court concludes that Petitioner Adam Musser has not shown that the Iowa Supreme Court's determinations on any ground for issuance of a writ of habeas corpus presented to this

---

[13] The Iowa Supreme Court's decision also does not run afoul of the Supreme Court's later ruling in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2532 (2009), in which the Supreme Court held that laboratory reports prepared especially for the defendant's trial were testimonial and could not be admitted through "certificate of analysis" instead of laboratory analyst's live testimony.  Unlike the laboratory reports in Melendez-Diaz, which were prepared for the purpose of providing evidence against the defendant at trial, see id., the laboratory reports in Musser's case were prepared for the purpose of providing Musser and his health care providers with medical information.

Court were contrary to, or involved an unreasonable application of, clearly-established federal law, or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Nor has Musser otherwise shown that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

The Court therefore must **deny** Adam Musser's Petition for a Writ of Habeas Corpus in each above-captioned case. These cases are **dismissed.** No certificate of appealability will issue.

**IT IS SO ORDERED**.

Dated this 11th day of April, 2012.

JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT